D1F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN J. CURCIO,

              Plaintiff,

   -against-

ROOSEVELT UNION FREE SCHOOL DISTRICT,
BOARD OF EDUCATION OF THE ROOSEVELT
UNION FREE SCHOOL DISTRICT,
WILHELMINA FUNDERBURKE, individually and
as a member of the BOARD OF EDUCATION OF
THE ROOSEVELT UNION FREE SCHOOL DISTRICT,

              Defendants.
----------------------------------------------------------------X

<u>ORDER</u>
10-CV-5612 (SJF)(AKT)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y
★ DEC 19 2012 ★
LONG ISLAND OFFICE

FEUERSTEIN, J.

On September 25, 2012, a jury returned a verdict finding that defendant Roosevelt Union Free School District ("defendant") retaliated against plaintiff John J. Curcio ("plaintiff") for filing complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et seq.</u> [Docket Entry No. 125]. A trial on damages is scheduled for March 11, 2013. Pending before the Court is defendant's motion <u>in limine</u> seeking an order "precluding plaintiff from offering any testimony and/or documents into evidence at the time of trial in support of the claim for pension related damages and dismissing the claim for pension damages in the amended complaint." [Docket Entry No. 138]. For the reasons that follow, defendant's motion is granted.

I.    Standard

Federal Rule of Civil Procedure 26(a) ("Rule 26(a)") requires a plaintiff to disclose, without awaiting a discovery request, <u>inter alia</u>, "a computation of each category of damages claimed," and to "make available for inspection . . . the documents or other evidentiary material,

unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Federal Rule of Civil Procedure 26(e) ("Rule 26(e)") further provides that "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) ("Rule 37"). "A district court has wide discretion to impose sanctions, including severe sanctions, under [Rule] 37, and its ruling will be reversed only if it constitutes an abuse of discretion." Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006). A district court abuses its discretion where its decision (1) rests on an error of law or a clearly erroneous factual finding, or (2) "cannot be located within the range of permissible decisions." Id. (internal quotation marks omitted).

Even where a district court finds that a failure to comply with Rule 26(a) was not substantially justified or harmless, whether to preclude the relevant information or testimony is within the discretion of the district court. Id. at 298-99. To determine whether preclusion is proper, the district court must consider: (1) the party's explanation for the failure to comply with its disclosure obligations; (2) the importance of the testimony of the precluded witness; (3) the

prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. Id. at 296 (citing Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)). Preclusion of evidence pursuant to Rule 37 "does not require a showing of bad faith." Id.

II.     Background

Plaintiff provided his initial disclosures to defendant on March 29, 2011. Declaration in Support of In Limine Motion by Maurizio Savoiardio [Docket Entry No. 139] ("Def. Aff.") Ex. A. The initial disclosures included the following list of "damages claimed by the disclosing party and the materials supporting each computation":

1. Back pay – lost pay to be determined by court – personnel and income records.
2. Compensatory/pain and suffering – physical and emotional damages to be determined at trial – medical records and testimony.
3. Punitive damages – to be determined at trial.
4. Attorney's fees and costs – prevailing caselaw and market rates.

Id. The initial disclosures did not refer to any pension-related damages.

Defendant served interrogatories on plaintiff on April 4, 2011, which requested that plaintiff, inter alia: (Interrogatory No. 3) "[s]tate in detail each and every financial expense or loss allegedly incurred by [plaintiff] as a result of the allegations in the complaint, describe the nature of said expense or loss, state the specific amount, the date incurred and the method used to calculate same"; (Interrogatory No. 5) "[s]et forth in detail each and every future financial expenses or loss for which plaintiff is seeking compensation, describe the nature of said expenses or loss, state the specific amount, and the method used to calculate same"; and (Interrogatory No. 6) [i]dentify any other damages allegedly incurred by plaintiff as a result of the allegations in the complaint." Def. Aff. Ex. B at ¶¶ 3, 5-6. Defendant's interrogatories also requested that plaintiff: (1) "[i]dentify . . . each person who [plaintiff] believe[s] to have knowledge or

information relevant to each and every damage sought in this action," and "[w]ith respect to each such person, provide the substance of their knowledge or information," id. at ¶ 2; and (2) "[i]dentify all witnesses plaintiff intends to call at the time of trial," id. at ¶ 8.

Plaintiff remained employed by defendant until June 30, 2011. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion in Limine [Docket Entry No. 141] ("Pl. Memo.") at 1. On July 15, 2011, plaintiff filed an amended complaint, which added a request that the Court "[o]rder[] Defendants to pay all back pay and front pay and all other emoluments of employment, including pension credits, Plaintiff is entitled to as a result of the wrongful recommendation of the denial of tenure and the constructive discharge of Plaintiff," and "[o]rder[] Defendants to pay all back pay and front pay and all other emoluments of employment, including pension credits, to Plaintiff for Plaintiff's resignation from employment with the Defendants." [Docket Entry No. 27] at 14.

Plaintiff responded to defendant's interrogatories on August 1, 2011. Def. Aff. Ex. D. In response to Interrogatory No. 3, plaintiff stated as follows:

> If Plaintiff had been offered a salary equal to that of the salary offered to the recommendation for Assistant Superintendent for Educational Services, John O'Mard, Plaintiff would have earned an additional $38,000 of base salary per year for each of the three years the Plaintiff was in his position. If Plaintiff had been offered a salary equal to that of the salary offered to the recommendation for Assistant Superintendent for Curriculum and Instruction, Roxanne Garcia-France, Plaintiff would have earned an additional $26,000 of base salary per year for each of the three years the Plaintiff was in his position. If Plaintiff had been offered a salary equal to that of the salary offered to the recommendation for Middle School Principal, Robert Tucker, Plaintiff would have earned an additional $29,000 of base salary per year for each of the three years the Plaintiff was in his position.

Id. at 3-4. In response to Interrogatories No. 5 and No. 6, plaintiff referred to his initial disclosures (which did not include any mention of pension-related damages) without further

elaboration and "reserve[d] the right to amend and/or supplement [his] response at the end of discovery." Id. at 4. In response to defendant's request that plaintiff identify people with knowledge of the alleged damages incurred and the witnesses plaintiff intended to call at trial, plaintiff referred to his initial disclosures and stated that "he has not identified all the witnesses that he intends to use at trial," but that "[t]his information will be provided in accordance with the Federal Rules of Civil Procedure . . . ." Id. at 5-6.

Magistrate Judge Arlene Tomlinson ordered that "[a]ll discovery, including production of all expert reports" be completed by September 2, 2011. [Docket Entry No. 22]. According to plaintiff, "[t]hough Discovery [sic] ended on September 2, 2011, both parties continued to conduct depositions and produce documents." Pl. Memo. at 1.

On November 8, 2011, the parties filed a proposed joint pretrial order. [Docket Entry No. 43]. Plaintiff included in the list of exhibits to be offered in his case in chief an "Employee Benefit Status Spreadsheet, dated March 9, 2009," Id. Defendant filed a motion in limine seeking to exclude, inter alia, the Employee Benefit Status Spreadsheet upon the basis that it was not produced by plaintiff during discovery (or afterward) and defendant was not on notice of the exhibit's existence until the filing of the pretrial order. [Docket Entry No. 104]; Reply Declaration in Support of In Limine Motion [Docket Entry No. 113] at ¶¶ 15-18. The Court's order granting in part and denying in part defendant's motion excluded the Employee Benefit Status Spreadsheet. [Docket Entry No. 114].

The proposed joint pretrial order states that plaintiff "is expected to testify about the entirety of his employment with the Roosevelt Union Free School District, including the circumstances surrounding his claim of racial discrimination," but makes no mention of potential expert testimony with respect to pension-related damages. [Docket Entry No. 43] at 46.

On October 3, 2012, after the liability phase of the trial concluded and prior to a settlement conference scheduled for November 5, 2012, plaintiff emailed defendant an Employee Benefit Profile "as part of [plaintiff's] continuing duty to disclose." Pl. Memo. at 1-2, Ex. 2. According to plaintiff, "[t]he Employee Benefit Profile was the document used to calculate pension damages and the projected harm [plaintiff] will suffer in the future given his current status," and includes "the Pension Formula used to calculate the income [plaintiff] would receive if he retired at a specific age, it lists his service credit history, it clearly states a formula to determine his final average salary and what his payment options would be at retirement." Id.

III. Analysis

Plaintiff has failed to comply with his discovery obligations, and this failure is not substantially justified or harmless. Plaintiff states that pension-related damages were not included in his initial disclosures because he remained employed by defendant at the time and the full extent of his damages were not yet known. This explanation does not account for plaintiff's failure to supplement his initial disclosures as required by Rule 26(e), see Design Strategy, 469 F.3d at 295 ("[N]owhere did [the plaintiff] ever disclose 'lost profits' as even a 'category' of 'damages' sought on its Initial Disclosure Statement . . . [and] the Record does not reflect any supplemental disclosures as required by Rule 26(e) . . . ."), or to include any reference to pension-related damages in his response to defendant's interrogatories.

Plaintiff failed to provide any information regarding the alleged pension-related damages during discovery. It was not until October 3, 2012, after the jury returned a verdict on liability and over a year after the close of discovery, that plaintiff provided defendant with the Employee Benefit Profile. In addition to being untimely, this disclosure is inadequate under Rule 26(a), as it includes no calculation of plaintiff's purported damages. See id. at 295 ("Rule 26(a) requires

more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents."); see also Spotnana, Inc. v. Am. Talent Agency, Inc., No. 09-CV-3698, 2010 WL 3341837, at *1 (S.D.N.Y. Aug. 17, 2010) (rejecting the argument that a failure to disclose a computation of damages is excusable where the other party has in its possession "information sufficient to determine" the damages).

According to plaintiff, his inclusion of "all other emoluments of employment, including pension credits" in his amended complaint put defendant on notice that he would be seeking pension-related damages. However, a general demand in a complaint fails to satisfy the requirement of Rule 26(a) that plaintiff provide "a computation of each category of damages claimed" and "make available for inspection . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). See also Design Strategy, 469 F.3d at 293-97 (holding that "the District Court did not abuse its discretion in determining that sanctions, including severe sanctions, were warranted for [the plaintiff's] failure to abide by Rule 26(a)(1)(c)" where the plaintiff "indicated that it might seek lost profits by referring to lost revenues in the . . . [c]omplaint . . . and thereby arguably put the defendants on notice that lost profits might be sought," but did not "provide[] any specific computation of lost profits nor provide[] any evidence on the basis of which such computation might be made") (internal quotation marks omitted).

Plaintiff argues that his belated disclosure is justified because the Employee Benefit Profile was "newly generated" and was disclosed as soon as it became available to plaintiff. Pl. Memo. at 6. Even if the Employee Benefit Profile was not generated until October 2012, plaintiff provides no explanation as to why he failed to disclose his intention to seek pension-

related damages after he resigned his position with defendant in June 2011 or to identify himself as a potential expert witness. See Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Finance Corp., No. 04-CV-3854, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005) ("[E]ven if plaintiff could not calculate its . . . damages at the time of its initial disclosure . . . there is no reason that it did not disclose its . . . damage theory."). Plaintiff also fails to explain why he was unable to obtain information needed to calculate the pension-related damages through discovery prior to October 2012. Moreover, plaintiff's assertion that he lacked the needed information prior to the generation of the Employee Benefit Profile is belied by plaintiff's inclusion of an "Employee Benefit Status Spreadsheet, dated March 9, 2009" in the joint proposed pretrial order.[1]

Plaintiff argues in the alternative that his failures to abide by Rule 26(a), even if unjustified, have not prejudiced defendant because "defendant[] had a full opportunity to investigate the damages claimed in this case and clearly stated in the Amended Verified Complaint" and "also had a full opportunity to depose Dr. Curcio regarding all of his damages claims, including the clearly stated pension damages and they failed to do so in the original instance." Pl. Memo. at 7. Given plaintiff's failure to comply with his disclosure obligations or to put defendant on notice of his intention to testify as an expert, defendant cannot reasonably be expected to have inquired about pension-related damages in its deposition of plaintiff. Therefore, plaintiff's conduct denied defendant an adequate opportunity to conduct discovery with respect to the alleged pension-related damages. See, e.g., 24/7 Records, Inc. v. Sony Music

---

[1] Plaintiff also asserts that defendant's "claim[] that these documents were provided after the close of discovery, is disingenuous considering that the defendants, two days before their opposition to Plaintiff's spoliation motion was due, resurrected documents, including audio tapes of the board meetings, which they had originally claimed were destroyed and did not exist." Pl. Memo. at 2. Defendant's failure to comply with its discovery obligations (which was thoroughly addressed by Magistrate Judge Tomlinson), see [Docket Entry No. 101], has no relevance to whether plaintiff's own failure is justified here.

Entm't, Inc., 566 F. Supp.2d 305 (S.D.N.Y. 2008) ("[The plaintiff] failed to make [the Rule 26(a)] mandatory initial disclosure of the . . . theory of damages and its accompanying damages computation, thereby depriving defendants of a meaningful opportunity to conduct discovery as to this damages theory."); Lamarca v. United States, 31 F. Supp.2d 110, 122 (E.D.N.Y.1999) ("[The] duty to disclose information concerning expert testimony is intended to allow opposing parties to have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.") (internal quotation marks and alteration omitted).

Plaintiff also asserts that any prejudice to defendant from plaintiff's lack of disclosure can be remedied by reopening discovery to allow defendant to depose plaintiff a second time. Pl. Memo. at 2. While another deposition may help defendant prepare for trial, reopening discovery at this stage of the case (over a year after it was closed) and forcing defendant to incur further costs in deposing plaintiff and potentially preparing its own expert witness is itself prejudicial. See Morritt v. Stryker Corp., No. 07-CV-2319, 2011 WL 3876960, at *7 (E.D.N.Y. Sept. 1, 2011) ("[T]he prejudice to defendants of admitting . . . [the expert witness] testimony would be severe, as discovery would have to be reopened to permit additional expert reports and depositions.") (internal quotation marks omitted); Design Strategy, 469 F.3d at 297 ("The prejudice to the defendants in having to prepare for this evidence would have been severe, as discovery would have had to be reopened to determine whether [the plaintiff's] calculations were proper. The 'expert' witness that [the plaintiff] wanted to call also would have had to (a) prepare a report; and (b) be qualified as an expert with regard to the calculation of damages."); Spotnana, 2010 WL 3341837, at *2 ("The prejudice . . . is particularly great because discovery, which

closed over four months ago, would have to be reopened for [the defendant] appropriately to respond to [the plaintiff's] damages calculations.").

Furthermore, the need to reopen discovery, even for the limited purpose of addressing pension-related damages, presents a strong possibility that a continuance of the scheduled trial will be needed. Given that this case has been pending for two (2) years and plaintiff has not offered an acceptable justification for his conduct, the possibility of a continuance weighs in favor of preclusion. See Design Strategy, 469 F.3d at 297 ("[W]eighing heavily on both the prejudice and possibility of continuance factors was the fact that discovery had been closed for 'approximately one and a half years,' and at the time of the offer of expert testimony there was only a 'short time left before trial.'"); Morritt, 2011 WL 3876960, at *8 ("[T]he fact that discovery is closed and this case has been pending for over four years 'weighs strongly against the possibility of a continuance.'") (quoting Spotnana, 2010 WL 3341837, at *5).

The importance of the pension-related information and proposed testimony to plaintiff's case is outweighed by plaintiff's failure to provide an adequate explanation for his behavior, the prejudice to defendant that his behavior has caused, and the likelihood that a continuance would be required to allow the discovery necessary to prevent any further prejudice. Furthermore, a severe sanction is appropriate here to deter plaintiff and other parties from similarly disregarding their discovery obligations in the future. See Southern New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 148-49 (2d Cir. 2010) ("Although one purpose of Rule 37 sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations, Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants," including a "general deterrent effect on the case at hand and on other litigation . . . .") (internal quotation marks and citations omitted).

IV. Conclusion

For the foregoing reasons, defendant's motion to exclude any testimony or evidence regarding pension-related damages is granted.

**SO ORDERED.**

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: December 19, 2012
Central Islip, New York